J-S65007-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT A. JACKSON, | |
| Appellant | No. 1090 EDA 2014 |

Appeal from the Judgment of Sentence Entered February 18, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003306-2012

BEFORE: BENDER, P.J.E., SHOGAN, J., and JENKINS, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED NOVEMBER 12, 2015**

Appellant, Robert A. Jackson, appeals *pro se* from the judgment of sentence imposed after he was convicted, following a non-jury trial, of aggravated assault, 18 Pa.C.S. § 2702(a)(3), simple assault, 18 Pa.C.S. § 2701(a), and resisting arrest, 18 Pa.C.S. § 5104. For the following reasons, we dismiss this appeal.

The trial court set forth the facts of Appellant's case, as follows:

> On February 26, 2012, at approximately 9:30[]pm, in the area of 3400 North Carlisle Street in Philadelphia, Temple University Police Officers Rodney Hill and Simone Molotsky observed [Appellant] driving a gray vehicle down a one-way street in reverse and nearly hitting another vehicle. The officers stopped [Appellant's] vehicle for investigation.
>
> The officers approached [Appellant's] vehicle and engaged him in conversation. [Appellant] stated that he was very upset over the loss of his grandmother and he was looking for a hospital. Officer Hill collected [Appellant's] driver's license, registration, insurance card, and car keys, and returned to the

patrol vehicle to conduct an NCIC/PCIC check. The check returned a clear result and Officer Hill again approached [Appellant's] vehicle, intending to let him go with a verbal warning.

As Officer Hill approached the vehicle, [Appellant] locked the doors. Upon reaching the vehicle, Officer Hill observed [Appellant] using his cell phone. Officer Hill knocked on the window, and [Appellant] indicated with his finger for the officers to "wait a minute." Officer Hill continued to knock on the window, at which point [Appellant] began to look agitated. Based upon [Appellant's] actions, Officer Hill believed "that there was an officer safety issue." [Appellant] then reached behind the vehicle's front seat, so that his hands were no longer visible to the officers. Officer Hill ordered [Appellant] to show his hands, and [Appellant] ignored this command.

Officer Hill remembered that earlier he had placed the keys to [Appellant's] vehicle on top of its hood. Officer Hill collected the keys, used them to unlock [Appellant's] vehicle, and requested that [Appellant] exit the vehicle. [Appellant] ignored this request. Officer Hill again ordered [Appellant] to exit the vehicle, and [Appellant] again ignored the order. Officers Hill and Molotsky proceeded to remove [Appellant] from his vehicle. As they removed him, [Appellant] "began to fight with" the officers, and then fell to the ground with both officers.

On the ground, the officers wrestled with [Appellant], attempting to handcuff him and to place him under arrest. During this entire time, Officer Hill testified that [Appellant] "was fighting – he wasn't throwing punches[]…[] he was trying to get away any[]way he could." [Appellant] swore at the officers, kicked his legs and flailed his arms at them, and finally locked his arms beneath his body.

At this point, Officer Molotsky attempted to grab [Appellant's] left arm, which was under his stomach. [Appellant's] head was facing to the right. "As soon as [Officer Molotsky attempted to grab [Appellant's] arm,] he turned his head to the left" and bit Officer Molotsky on the hand for a brief period of time. Officer Molotsky struggled to remove her hand from [Appellant's] mouth. Officers Molotsky and Hill, with the assistance of several backup officers, were ultimately able to subdue [Appellant] and place him under arrest.

Officer Molotsky felt pain when [Appellant] bit her hand but did not observe any bleeding or breaking of the skin of her hand. Later that same day, she went to the Emergency Room of Temple University Hospital, where hospital staff examined her hand. When she was washing her hands the following morning, Officer Molotsky experienced a burning sensation in the area where [Appellant] bit her. She also noticed an abrasion to her skin. Throughout the day after [Appellant] bit her hand, she experienced pain where Appellant bit her.

[Appellant] testified as part of the trial and, *inter alia*, denied biting Officer Molotsky on the hand. Based [on] the witnesses' demeanor and manner of testifying, as well as the photograph of Officer Molotsky's hand, the trial court chose to credit the testimony of the police officers and discredit the testimony of [Appellant] regarding whether [Appellant] bit Officer Molotsky on the hand.

Trial Court Opinion (TCO), 8/11/14, at 1-3 (citations to the record omitted).

Based on this evidence, the trial court convicted Appellant of the above-stated offenses. On February 18, 2014, the court sentenced him to a term of 1½ to 4 years' incarceration. Appellant, who was then represented by counsel, filed a timely post-sentence motion, which was denied on March 13, 2014. He then filed a timely, counseled notice of appeal on April 1, 2014, docketed by this Court at 1054 EDA 2014. However, on April 16, 2014, Appellant filed with this Court a *pro se* "Praecipe for Discontinuance" of that appeal. Accordingly, the appeal docketed at 1054 EDA 2014 was discontinued.

J-S65007-15

On April 14, 2014, Appellant filed a timely, *pro se* notice of appeal, which underlies the present decision.[1]  Appellant subsequently filed a *pro se* appellate brief, raising the following issues for our review, which we reproduce verbatim:

> 1. Whether Appellant a victim of the fruit of a poisoness tree, & of abusive authority, abuse of discretion, administrative power, fraud & conspiracy, & a fundamental misrepresentation of justice & the judicial system where those proceedings were, infact unfair with, & violative which now give rise thus trigger the protection  of his constitutional guaranteed secured right's, where justice failed Appellant?
>
> 2. Whether the accussor fabricated this entire process with a clever scheme & plot to manipulate the facts in her favor where once she discovered Appellant was infact disabled & could not bend his left leg to get out of the vehicle without –aide of his kane, once Appellant was pulled out of his vehicle could not walk & fell as he was recording the alleged illegal stop, Officer Molotsky thought quick to say he bit her after her coligue's that arrive after ask what did he do?
>
> 3. Whether all under color conspired to allow this tyranny in the court of law which lead to a fundamental miscarriage of justice where minus the defense counsel of the trial all violated those due process right's where those proceedings were held without any relivant evidence as it was determined by those foremention to bring fraud upon the court, where the only evidence was that of an insufficient photo allowed by the trial judge brought by the prosecutor & the accussor to hide the truth from the higher court's & to mislead the record even up to the appeal of those

_____

[1] After filing this notice of appeal, Appellant filed with this Court a petition to proceed *pro se*, and we remanded for the trial court to conduct a *Grazier* hearing to determine if Appellant's waiver of his right to counsel was voluntary. *See Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).  After conducting that hearing, the trial court granted Appellant's request to waive his right to appellate counsel.

- 4 -

> fabricated proceedings where even the trial judge mislead the record in his findings even up to Appellants appeal process the trial judge tried to conspire with the Appellants appeal counsel as it is evident?

Appellant's "Supplemental" Brief at 2 (unnecessary capitalization omitted; emphasis in original).[2]

The "Argument" section of Appellant's *pro se* brief is nearly incomprehensible. **See** Appellant's Brief at 7-14. From what we can ascertain, Appellant's numerous arguments include the following: (1) his vehicle was illegally stopped by the police officers, Appellant's Brief at 7, 8; (2) the trial court improperly admitted the photograph of Officer Molotsky's hand that was "irrelevant [and] fabricated[,]" *id.* at 7; (3) the Commonwealth withheld evidence in violation of **Brady v. Maryland**, 373 U.S. 83 (1963), *id.* at 7, 8; (4) the Commonwealth's witnesses testified inconsistently and dishonestly, *id.* at 7; (5) the evidence was insufficient to sustain Appellant's convictions, *id.* at 8; (6) the trial court had an "ongoing conspiracy" with the Commonwealth and was biased against Appellant, *id.* at 8-9, 10-11; (7) the prosecutor committed misconduct and "a fraud upon the court[,]" *id.* at 9, 13.[3]

_____

[2] The first four, unnumbered pages of Appellant's brief appear to set forth a statement of the facts, after which Appellant begins a "supplemental" brief that includes page numbers and delineated sections. Any citations to Appellant's brief in this decision refer to pages in his "supplemental" brief.

[3] In the Commonwealth's brief, it indicates that it also had difficulty discerning Appellant's claims, and interpreted his brief as presenting the following arguments:

*(Footnote Continued Next Page)*

While we can identify at least some of Appellant's basic assertions, those claims are not sufficiently developed to permit our meaningful review. As this Court has previously explained,

> "When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities." ***Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007), *appeal denied,* 596 Pa. 703, 940 A.2d 362 (2008) (citations omitted); ***Commonwealth v. Whitaker***, 30 A.3d 1195, 1197 n. 7 (Pa. Super. 2011); Pa.R.A.P. 2119(b). We "will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived."

***In re R.D.***, 44 A.3d 657, 674 (Pa. Super. 2012).

Here, Appellant does not provide any discussion that is understandable, properly developed, or supported by pertinent legal

---

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

> [T]hat the initial traffic stop was somehow unlawful; that the Commonwealth improperly failed to introduce medical records to corroborate [the] victim's injuries and allegedly [withheld an] exculpatory video from a convenience store; that the victim officer's testimony was somehow insufficient to show the extent of her injuries; that [Appellant's] version of events was accurate and suppressed; and general allegations that the Commonwealth and lower court undertook some unspecified conspiracy and demonstrated bias toward [Appellant.]

Commonwealth's Brief at 7 (citing Appellant's Brief at 7-12).

authority and/or citations to the record. As we are unable to meaningfully review any of Appellant's issues, we are compelled to dismiss his appeal.[4]

Appeal dismissed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/12/2015

---

[4] We acknowledge that Appellant filed a reply brief that is slightly more clear than his original brief. Therein, he argues that the Commonwealth's brief was untimely. While Appellant is correct that the Commonwealth's brief was filed two days after it was due, that fact does not entitle Appellant to any relief. **See** Pa.R.A.P. 2188 (stating that if the appellant fails to file a brief, the appellee may move for dismissal of the appeal; however, if the appellee fails to file a brief, the consequence is that he/she "will not be heard at oral argument except by permission of the court"). Appellant also seemingly reiterates in his reply brief that the Commonwealth and the trial court conspired to unfairly convict him. Again, Appellant's argument is confusing, and he provides no citation to the record or pertinent legal authority to support his assertions. Moreover, "[u]nder our Rules of Appellate Procedure, an appellant is prohibited from raising new issues _or remedying an original brief's deficient discussions in a reply brief._" **Commonwealth v. Bracey**, 795 A.2d 935, 940 n.5 (Pa. 2001) (emphasis added). Accordingly, Appellant's reply brief does not save his appeal from dismissal.